**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAUREN D'ERAMO<br>Plaintiff, | : | CIVIL CASE NO.<br>3:24-CV-1231 (JCH) |
| v. | : | |
| CORTI AMERICA, INC.,<br>Defendant. | : | SEPTEMBER 24, 2026 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 25)**

## I. INTRODUCTION

The plaintiff, Lauren D'Eramo ("Ms. D'Eramo"), filed a lawsuit against the defendant, Corti America, Inc. ("Corti") with claims arising from her employment and termination. See Complaint (Doc. No. 1). Specifically, Ms. D'Eramo made five claims: (1) sexual harassment in a hostile work environment pursuant to 42 U.S.C. § 2000e-2; (2) retaliation pursuant to 42 U.S.C. § 2000e-2; (3) negligent supervision; (4) negligent retention; and (5) intentional infliction of emotional distress. See generally id.

Before the court is Corti's Motion for Summary Judgment. See Defendant's Motion for Summary Judgment (Doc. No. 25); Memorandum in Support of Defendant's Motion for Summary Judgment ("Mem. S.J.") (Doc. No. 26). Ms. D'Eramo filed an Opposition. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 30). Corti filed a Reply. See Reply Brief in Support of Defendant's Motion for Summary Judgment ("Reply") (Doc. No. 32).

For the reasons stated below, the court grants Corti's Motion for Summary Judgment in part and dismisses the remainder of Ms. D'Eramo's claims without prejudice.

## II. BACKGROUND[1]

Corti hired Ms. D'Eramo as an at-will Sales Development Representative ("SDR") as part of its commercial team in June 2022. See 56(a)(2) Statement of Facts ("SOF") at ¶ 2. The position was remote, and Ms. D'Eramo worked from her home in Easton, Connecticut. Id. at ¶ 3. She was generally responsible for generating new business through cold calling, emails, and outreach over LinkedIn. Id. at ¶ 4. Ms. D'Eramo reported to Kaitlyn McIntyre, located in Maine, who in turn reported to Ryan Lewis, VP of Sales, located in North Carolina. Id. at ¶ 5. When Ms. D'Eramo started her employment, Corti focused its outreach on 911 emergency dispatchers. Id. at ¶ 6.

Corti held CortiCon2022 in Italy with approximately 70 employees attending, including Ms. D'Eramo and Sotiris Lamprinidis, an employee from Denmark. Id. at ¶ 7. On Wednesday, September 14, approximately ten non-managerial employees, including Ms. D'Eramo and Mr. Lamprinidis, sat in a circle socializing after dinner. Id. at ¶ 8. Mr. Lamprinidis, who was drinking, called Ms. D'Eramo a "bitch" a few times, criticized her for being American, made comments about her jewelry and how long it would take someone in Europe to save up money to purchase it. Id. at ¶ 9. Mr.

[1]The facts presented in this section of the court's Ruling are taken from the parties' undisputed Statements of Fact, as presented in the Rule 56 Statements. See Doc. No 30-1 ("SOF"). The court draws primarily from the parties' Local Rule 56(a) Statements in summarizing the undisputed material facts. For ease of reference, the court cites to Ms. D'Eramo's Local Rule 56(a)(2) Statements where the parties agree because, in accordance with Local Rule 56(a)(2), Ms. D'Eramo's 56(a)(2) Statement contain a reproduction of each numbered paragraph from Corti's Local Rule 56(a)(1) Statement, as well as Ms. D'Eramo's admissions and denials. In addition, the court also relies on Ms. D'Eramo's Statement of Additional Material Facts ("PAMF"), if there is evidence cited in support of the statement.

In cases where Ms. D'Eramo denied a portion of a 56(a) Statement, the court reads the part not denied as admitted. See, e.g., SOF at ¶ 8, 12. If Corti has come forward with evidence in support of its Statement and Ms. D'Eramo has cited evidence to support her denial in part, the court has treated the Statement to reflect the partial denial. If the denial or partial denial does not have evidence to support it, the court deems the Statement admitted in that regard. See Connecticut Local Rule 56(a)(3).

Lamprinidis, upon a disagreement with Ms. D'Eramo, said "[i]f I had a gun right now, I would shoot you." Id. at ¶ 10. At some point thereafter, Mr. Lamprinidis said to the group, in sum and substance, "[l]ast time I went down on Lauren, she smelled like fish." Id. at ¶ 11. At some point, later, Mr. Lamprinidis sexually assaulted Ms. D'Eramo. Id. at ¶ 12. Ms. D'Eramo's co-workers pulled him off her. See Plaintiff's Additional Material Facts ("PAMF") (Doc. 30-1) at ¶ 8. This was the third Corti event which led to a sexual harassment complaint being raised. Id. at ¶ 3. Ms. D'Eramo testified she was in shock and supervisors were informed. Id. at ¶¶ 11, 12, 13.

The next day, Thursday, September 15, the matter was reported to the Global VP of People, Jeanine Brockhoff. See SOF at ¶ 15. Ms. Brockhoff spoke with Ms. D'Eramo the next morning and asked how Ms. D'Eramo would like to see the matter handled. Id. at ¶ 16. Ms. D'Eramo initially said she did not want Mr. Lamprinidis to lose his job but never wanted to be in any setting with him again. Id.

Over the weekend, Ms. Brockhoff conferred with witnesses and management to discuss the incident and next steps. Id. at ¶ 17. On Monday, September 19, Ms. Brockhoff spoke with Ms. McIntyre and Mr. Lewis, and both expressed their opinions that Mr. Lamprinidis should be terminated. Id. at ¶¶ 18, 19. On September 20, Mr. Lamprinidis' managers issued him a formal written warning. Id. at ¶ 20. That same day, Ms. Brockhoff wrote to Corti's leadership team outlining company-wide initiatives planned as a response to the incident. Id. at ¶ 21. On September 22, Mr. Lamprinidis told Ms. Brockhoff he did not remember much about his conduct that evening but disagreed that it was sexual harassment because he had no sexual intent. Id. at ¶ 23. The next day, senior leadership met to discuss the incident, and Ms. Brockhoff sent a

summary of events and what Corti intended to do about the incident. Id. at ¶ 24. An amended written warning was given to Mr. Lamprinidis on September 26, describing the incidents of misconduct and concluding: "[i]n Corti, we believe in giving people a second chance, so we also expect that we will not see this behaviour [sic] again while you are working at Corti. If it were to happen, it has consequences for continuing your employment with us." Id. at ¶ 25. On October 3, Brockhoff informed Ms. D'Eramo of the results of the investigation and thanked her for participating. Id. at ¶ 26.

Upon Ms. D'Eramo's request, Ms. McIntyre scheduled a call on October 18, 2022, with Ms. D'Eramo and Ms. Brockhoff to discuss Corti's handling of the matter. Id. at ¶ 27. During the call, Ms. D'Eramo said that, while it was "kind of okay that they were keeping" Mr. Lamprinidis, she was still upset about how the matter was handled and would not feel safe being in the same room with him. Id. Later that day, Ms. Brockhoff and senior leadership held a call discussing how Corti handled the matter and how to improve for the future. Id. at ¶ 28. This included a decision to establish a DEI Committee and mandatory sexual harassment and inclusivity training. Id. Corti received, and Ms. D'Eramo is aware of, no further complaints of inappropriate behavior by Mr. Lamprinidis. Id. at ¶ 29. Ms. D'Eramo had no further interactions with Mr. Lamprinidis aside from an occasional company-wide Zoom call, during which she kept her camera off. Id. at ¶ 14.

Ms. D'Eramo was diagnosed with Post-Traumatic Stress Disorder following the assault. See PAMF at ¶ 14. Corti was aware of her diagnosis and her struggles with anxiety. See id. Her struggles affected her confidence and job performance. Id. at ¶ 18. She expressed these struggles to Ms. McIntyre and reported feeling isolated and

judged by her colleagues. Id. at ¶¶ 14, 20. Corti did not offer any help, despite Ms. D'Eramo asking for it, and Ms. D'Eramo felt unprotected. Id. at ¶¶ 20, 21. After learning Mr. Lamprinidis would not be terminated, Ms. D'Eramo requested that she not be required to attend company meetings or events where he would be present, but she did not receive those assurances.[2] Id. at ¶ 24.

Ms. D'Eramo received a "below expectations" rating for Q3 2022, a rating she does not dispute. See SOF at ¶ 30. In mid-November 2022, Mr. Lewis and Ms. McIntyre reviewed some of Ms. D'Eramo's calls and noted she needed improvement. Id. at ¶ 31. A few days later, Ms. McIntyre reviewed Ms. D'Eramo's performance and noted that Ms. D'Eramo hit her weekly goals only twice in the five months she had been there. Id. at ¶ 32. By mid-December 2022, Ms. D'Eramo was trending to perform below expectations for Q4, and her supervisors suggested a Performance Improvement Plan (PIP) be implemented and began to consider whether Corti should continue to employ her. Id. at ¶ 34. Ms. D'Eramo admits she was not performing at the level Corti needed. Id.

About this time, Corti shifted its sales focus from 911 hotlines to hospitals; the SDRs were tasked with learning to pitch Corti's products to physicians. Id. at ¶ 35.

Corti implemented a PIP for another SDR employee in mid-September 2022 and, when he failed to satisfy it, terminated his employment in mid-October 2022. Id. at ¶ 36. Corti placed another SDR employee on a PIP in February 2023, and that employee was terminated in early March 2023. Id. at ¶ 38. An account executive was placed on a PIP

[2] Corti offers evidence that Ms. Brockhoff told Ms. D'Eramo that Mr. Lamprinidis would be asked not to attend future company-wide events if Ms. D'Eramo felt unsafe. SOF ¶ 27. Ms. D'Eramo does not deny this but testified that she does not recall this statement. Id.

in March 2023 and, when he failed to satisfy it, he was terminated at the end of that month. Id. at ¶ 41.

On January 30, 2023, Ms. McIntyre discussed Ms. D'Eramo's performance with Ms. Brockhoff and Mr. Borelli-Sejersen, another supervisor, suggesting either a four-week PIP or resignation with severance. Id. at ¶ 37. On February 13, 2023, Ms. D'Eramo received a below expectations rating on her Q4 and EOY 2022 evaluations. Id. at ¶ 39. On March 1, Ms. D'Eramo was identified as one of a number of employees to be placed on a PIP. Id. at ¶ 40.

On or about March 8, Ms. McIntyre told Ms. Brockhoff the SDRs had expressed uncertainty about their future and individual success at Corti, and Mr. Borelli-Sejersen noted that the SDRs would not be very effective as the company pivoted. Id. at ¶ 42. Ms. D'Eramo told Ms. McIntyre she did not want to become an Account Executive, the next promotion step, and did not want to remain an SDR in the long term. Id. at ¶ 43. Ms. McIntyre suggested a hybrid role in another function or eliminating the SDR role entirely, which the leadership discussed for the ensuing months. Id. at ¶ 44. By March 22, 2023, leadership concluded they could not justify allocating a full-time hybrid role, and termination was warranted. Id. at ¶ 45. However, a senior officer discovered that Ms. D'Eramo had never been placed on a PIP prior to termination and directed she be given that option. Id. Internally, Corti commented that terminating Ms. D'Eramo without having given her a written proposal or PIP would involve risk. See PAMF at ¶ 31.

On March 31, 2023, Ms. D'Eramo met with her supervisors who noted her performance was below expectation and that they could not find another role for her at the company. SOF at ¶ 46. They gave her a choice between going on a PIP and

resigning with severance. See id. Ms. D'Eramo expressed interest in finding another role. Id. On April 5, Mr. Borelli-Sejersen emailed Ms. D'Eramo outlining those options, and she chose to proceed with the PIP. Id. at ¶ 47. The PIP reiterated that Ms. D'Eramo had been missing her targets and outlined the success goals for staying at Corti. Id. at ¶¶ 48, 49. Despite choosing a PIP, Ms. D'Eramo had been terminated in TriNet causing her to temporarily lose her health insurance. See PAMF at ¶ 34.

Ms. D'Eramo met regularly with her supervisors who coached her on her performance and offered feedback. See SOF at ¶ 50. Ms. D'Eramo did not meet all four of the PIP goals. Id. at ¶ 51. On June 1, Mr. Borelli-Sejersen extended the PIP for another four weeks and provided Ms. D'Eramo with revised goals. Id. at ¶ 52.

In June 2023, Corti implemented a company-wide reorganization including a dissolution of the SDR team. Id. at ¶ 54. Corti determined that the SDR outreach had not been effective for the new health market. Id. at ¶ 55. Corti determined Ms. D'Eramo was not ready to be promoted to the next step and was not senior enough for any other roles. Id. Corti also laid off another SDR employee but retained two others in revised roles. Id. at ¶ 56. On June 22, 2023, Ms. D'Eramo received an email informing her that her employment was terminated. Id. at ¶ 57.

Ms. D'Eramo filed a charge against Corti with the EEOC on October 13, 2023. Id. at ¶ 58. The sexual harassment alleged from Mr. Lamprinidis took place almost 400 days earlier. Id. at ¶ 59.

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

As a preliminary matter, this court notes that the alleged conduct of Mr. Lamprinidis was a terrible assault to Ms. D'Eramo's person. There appears to be no dispute that Mr. Lamprinidis committed the act alleged by Ms. D'Eramo. See SOF at ¶¶ 8-12. Nothing in this Ruling diminishes the trauma she has reported or the sexual assault – physical and verbal – on September 14, which conduct is essentially undisputed by Corti, at least for purposes of the Summary Judgment Motion.

### A. Count One: Sexual Harassment in a Hostile Work Environment pursuant to 42 U.S.C. § 2000e-2

In Count One, Ms. D'Eramo argues that Corti subjected her to a sexually hostile work environment in violation of Title VII. See 42 U.S.C. § 2000e-2; Complaint at 39-48.

Corti argues for summary judgment on three separate grounds: (1) the claim is time-barred; (2) Corti is not liable for Mr. Lamprindis' misconduct; (3) the conduct was not sufficiently severe or pervasive to sustain a hostile work environment claim. See Mem. S.J. at 30-35.

1. Whether the claim is time-barred.

Before filing a lawsuit under Title VII, a plaintiff must file a timely charge with the Equal Employment Opportunity Commission (EEOC). In states like Connecticut, where a state agency has authority to grant relief from unlawful employment practices, a plaintiff who first files with the state agency must bring a charge before the EEOC within 300 days after the alleged unlawful employment practice occurred. See 42 U.S.C. § 2000e-5(e)(1). Generally, for discrete acts of discrimination or harassment, the Title VII limitations period commences when the act occurs. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Here, Ms. D'Eramo's allegations concern an incident on the evening of September 14, 2022. See SOF at ¶¶ 7–12. She filed her EEOC complaint on October 13, 2023. Id. at ¶ 58. This is 395 days after the incident. Id. at ¶ 59. Therefore, if Ms. D'Eramo's hostile work environment claim rests solely on the September 14 assault, it is time-barred. See Mayeda-Brescia v. Hartford Pub. Schs., No. 3:19-CV-900 (JCH), 2021 WL 1812657, at *2 (D. Conn. May 6, 2021) (granting summary judgment when the final administrative exhaustion filing was untimely).

Ms. D'Eramo argues that the continuing violation doctrine applies here; thus, her claim is timely and summary judgment is not warranted. See Pl.'s Opp'n at 7-9. The continuing violation doctrine provides that a hostile work environment claim is timely "so

long as one act contributing to the claim occurred within the statutory period." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). If at least one act is timely, "the entire time period of the hostile work environment may be considered." Id. (quoting Morgan, 536 U.S. at 117). Thus, if Ms. D'Eramo demonstrated that Corti engaged in a pattern of conduct forming a hostile work environment, of which some actions occurred within the statutory period, her claim would not be barred.

Ms. D'Eramo alleges that Corti subjected her to a hostile work environment from the time of the alleged assault on September 14, 2022, until her termination on June 22, 2023. Pl.'s Opp'n at 8. Ms. D'Eramo filed a complaint with the EEOC on October 13, 2023. SOF ¶ 58. As a result, any behavior which took place for up to 300 days prior to that date is actionable as a claim. Thus, the court must first consider whether Ms. D'Eramo alleged sufficient facts to raise a genuine issue whether Corti subjected her to a hostile work environment during that period. If so, the court would then consider any actions by Corti which occurred prior to the limitations period that contributed to the same hostile work environment claim, including the alleged assault.

2. The hostile work environment claim.

To survive summary judgment, a plaintiff alleging a hostile work environment must show (1) 'that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2nd Cir. 2002) (internal quotations omitted). Harassment is sufficiently severe or pervasive if it "'create[s] an objectively hostile or abusive work environment, and the victim . . . subjectively perceive[s] the environment

to be abusive.'" Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Ms. D'Eramo's allegations indicate that she found the environment subjectively abusive. See Pl.'s Opp'n at 8. Thus, the court must consider whether the alleged misconduct created an objectively hostile work environment.

Taking the facts in the light most favorable to Ms. D'Eramo, she fails to demonstrate the existence of an objectively hostile work environment within the time limit. The conduct she cites includes the retention of Mr. Lamprinidis, the company's failure to assure her she would not have to see Mr. Lamprinidis, the company's failure to offer her help with her mental health and interpersonal struggles at work, and her termination. Pl.'s Opp'n at 8, 13. The allegations occurring within the time limit are not severe enough to rise to the level of a continuing hostile work environment. The plaintiff in King v. Aramark Services survived summary judgment for a sex-based hostile work environment claim by demonstrating her supervisor singled her out as a negative example in front of her male coworkers, excluded her from meetings with her own clients, commented on her weight and eating habits, and fabricated negative performance reviews to justify her termination. 96 F.4th 546, 553–54 (2d Cir. 2024). The conduct Ms. D'Eramo alleges, even viewed in the light most favorable to her, does not approach the level of hostility in King. Consequently, the evidence does not show an objectively severe or pervasive hostile environment.

In addition, Corti offers legitimate reasons for its conduct which establish that there was no policy or practice of discrimination or harassment. The company provided a summary of the decision-making process its officers took to discipline Mr. Lamprinidis and improve employee awareness of harassment. See SOF ¶¶ 17–29. They outlined

Ms. D'Eramo's declining performance and conversations among her supervisors on how to address it, including placing her on a PIP. See id. at ¶¶ 30–34, 37, 39–40, 42–49. Corti also showed that several other employees on PIPs, who failed to meet the goals of those plans, were terminated. See id. at ¶¶ 36, 38. Finally, Corti demonstrated that internal restructuring led to the elimination of Ms. D'Eramo's role and that several other employees were terminated for the same reason she was. See id. at ¶¶ 54–57. Ms. D'Eramo has not presented evidence that creates a genuine dispute of material fact regarding these legitimate reasons.

In sum, Ms. D'Eramo failed to establish the first element required for a hostile work environment claim under Title VII, the existence of an objectively severe and pervasive hostile environment within the time period to sue. Because Ms. D'Eramo failed to do so, the court does not consider the second element, whether the conduct can be imputed to Corti. Accordingly, D'Eramo has not demonstrated sufficient facts to support a continuing hostile work environment claim. The assault in September 2022 should therefore be considered a discrete event for the purposes of Ms. D'Eramo's Title VII claim, and the continuing violation doctrine does not apply. Her claim based on that event is time-barred.

Essentially, because a claim centered on Mr. Lamprinidis's assault is time-barred, Ms. D'Eramo attempts to bring a claim based on the negative effects she experienced following the assault which took place within 300 days of her filing. However, the continuing violation doctrine only extends the limitations period for a hostile work environment claim when further acts by an employer contributing to the hostile environment continue to take place. See King, 96 F.4th at 560. The doctrine

does not apply when a plaintiff simply continues to feel the effects of an unlawful act which preceded the statutory period.[3] Because Ms. D'Eramo did not allege that Corti engaged in unlawful practices following the assault, her claim fails. Summary judgment is granted to Corti on Count One.[4]

B. Count Two: Retaliation pursuant to 42 U.S.C. § 2000e-2

Turning to Count Two, Ms. D'Eramo claims that Corti terminated her in retaliation for her reporting Mr. Lamprinidis' assault. See Compl. at ¶¶ 49–67. Corti moves for summary judgment on two grounds: (1) Ms. D'Eramo cannot establish a causal connection between any protected activity and her termination; and (2) that even if Ms. D'Eramo made out a prima facie case, she cannot demonstrate that Corti's termination of her was pretextual and not for legitimate, non-retaliatory reasons. See Mem. S.J. at 35-37, Reply at 7-9.

Retaliation claims under Title VII are evaluated under the familiar burden-shifting framework. To establish a prima facie case, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she experienced a materially adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action. See Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). If a prima facie case is established, the burden shifts to the

[3] Courts applying the continuing violations doctrine in non-Title VII cases have come to a similar conclusion. See generally New York v. Niagara Mohawk Power Corp., 263 F.Supp.2d 650, 660 (W.D.N.Y. 2003) (holding that the continuing violation doctrine is only applicable in a Clean Air Act suit where there are "continual unlawful acts, not continual ill effects from a single violation"); Doe v. Blake, 809 F.Supp 1020, 1025 (D.Conn. 1992) (PCD) (citing Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) (holding similarly in the context of a §1983 claim).

[4] Corti is entitled to summary judgment on the grounds of the time bar and Ms. D'Eramo's failure to create a genuine issue of material fact as to an objectively severe and pervasive hostile work environment. Therefore, the court need not address the third alternative ground asserted by Corti, that Mr. Lamprinidis's conduct cannot be imputed to the company.

employer to articulate a legitimate, non-retaliatory reason for the adverse action. Id. at 9. The burden then shifts again to the plaintiff, who must show that retaliation for the protected conduct was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision. See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013). The plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. See Bassi v. N.Y. Med. Coll., No. 23-278, 2024 WL 3717317, at *2 (2d Cir. Aug. 8, 2024).

Assuming that Ms. D'Eramo can satisfy the prima facie requirement for retaliation, her claim fails on the pretextual burden. Corti has asserted legitimate, non-retaliatory reasons for her termination – the company-wide reorganization that occurred in June 2023, when Corti dissolved all the SDR positions and laid off most of her co-workers who were SDR's. See SOF at ¶¶ 54-57. Further, Ms. D'Eramo was on a PIP and was failing to meet her requirements for improvement. See id. at ¶¶ 30, 34, 39.

Corti's legitimate purpose is documented. Corti dissolved the SDR team to restructure commercial operations. Id. at ¶ 55. Ms. D'Eramo admitted she was not ready for a promotion, and there were no other roles available at her level. Id. Multiple other employees were laid off as a result of the reorganization. Id. at ¶¶ 54-57. The decision to eliminate the SDR function was a result of active discussion among leadership and driven by a pivot in business from emergency dispatchers to hospital outreach. Id. at ¶¶ 35, 44, 54–55.

Further, Ms. D'Eramo received "Below expectations" ratings for Q3 2022, Q4 2022, and EOY 2022—ratings she does not dispute. Id. at ¶¶ 30, 34, 39. She admits she was not performing at the level Corti needed. Id. at ¶ 34. She failed to satisfy three of the four goals set out in her PIP. Id. at ¶ 51. Corti placed SDR Taylor Scott on a PIP in mid-September 2022 and terminated his employment in mid-October 2022 for failure to satisfy it. Id. at ¶ 36. Corti placed SDR Hunter Beethem on a PIP in early February 2023 and terminated his employment in early March 2023. Id. at ¶ 38. Corti placed Account Executive Austin Albonetti on a PIP and terminated his employment in March 2023. Id. at ¶ 41. None of these individuals has any record of protected activity, yet each had a similar termination timeline as Ms. D'Eramo and were all in SDR positions like Ms. D'Eramo.

From the record before the court, there is no evidence that Corti acted with any pretext. Corti responded promptly to the misconduct, did an investigation, sought Ms. D'Eramo's views of the issue, and wrote a formal letter to Mr. Lamprinidis. See id. at ¶¶ 15, 16, 19–20, 22–25. Further, Ms. D'Eramo was not performing at a satisfactory level. Corti terminated her employment, along with others, as part of a documented, company-wide restructuring that eliminated the SDR role completely. Because Corti offered legitimate reasons for Ms. D'Eramo's termination, the burden shifts back to her to demonstrate that, but for her report of Mr. Lamprinidis' inexcusable conduct, her employment would not have been terminated. See Rosario, 2025 WL 2644724 at 10. There is no evidence in the record to support this conclusion, so her claim fails. Therefore, the court grants Corti's Motion for Summary Judgment as to Count Two.

C. Counts Three through Five: State Law Claims

Having granted summary judgment on the two federal claims, the court no longer has federal question jurisdiction over this matter. See 28 U.S.C. § 1331. Without federal question jurisdiction,[5] the court opts not to exercise its supplemental jurisdiction over the remaining state law claims. See Kavit. v. A.L. Stamm & Co., 491 F.2d 1176, 1179 (2nd Cir. 1974). Accordingly, Counts Three, Four, and Five are dismissed without prejudice.

## V. CONCLUSION

For the reasons stated above, the court grants Corti's Motion for Summary Judgment with respect to Counts One and Two. Counts Three, Four, and Five are dismissed without prejudice. Nothing in this Ruling should be taken to minimize the conduct and language to which Ms. D'Eramo was subjected to on September 14. Ms. D'Eramo, like all employees, is entitled to a workplace free of sexual harassment. However, the undisputed facts on the record, as a matter of law, do not establish Corti's liability as asserted by Ms. D'Eramo in this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of September 2026.

/s/ Janet C Hall
Janet C. Hall
United States District Judge

[5] The Complaint would appear to support diversity jurisdiction as to citizenship. However, there is no allegation concerning amount in controversy. If the plaintiff could plead facts to support diversity jurisdiction, she may move to reopen and file an amended complaint alleging her state claims within 21 days.